UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                 Plaintiff,             Case No. 23-cv-11104
                                          Honorable:
vs.                                 Mag. Judge:

5.30109943 Bitcoin valued at
$122,307.17; $5,000.00 Bank of
America Cashier's Check
#1040023934; and $21.99 Gemini
Cashier's Check #905871,

                 Defendants *in rem*.

_____

## **Complaint for Forfeiture**

_____

       Plaintiff, the United States of America, by and through Dawn N. Ison,

United States Attorney for the Eastern District of Michigan, and K. Craig

Welkener, Assistant United States Attorney, states the following in support of this

Complaint for Forfeiture:

### **Jurisdiction and Venue**

       1.     This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. §

981(a)(1)(C) related to a violation or violations of 18 U.S.C. § 1343.

2.     This Court has original jurisdiction over this forfeiture action under 28 U.S.C. § 1345 because this action is being commenced by the United States of America as Plaintiff.

3.     This Court has jurisdiction over this forfeiture action under 28 U.S.C. § 1355(b)(1)(A) and (B) because the acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.     Venue is proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in the Eastern District of Michigan.

5.     Venue is also proper before this Court under 28 U.S.C. § 1395(b) because the Defendants *in rem* were seized in the Eastern District of Michigan.

### Defendants *in rem*

6.     The Defendants *in rem* consist of the following: 5.30109943 BTC valued at $122,307.17; $5,000.00 Bank of America Cashier's Check #1040023934; and $21.99 Gemini Cashier's Check #905871.

7.     The Defendants *in rem* were seized by the U.S. Secret Service ("USSS") as proceeds of wire fraud pursuant to a seizure warrant executed in December 2022.

8.     The Defendants *in rem* are currently in the custody of the USSS.

## Underlying Criminal Statutes

9.     Title 18, United States Code, Section 1343 criminalizes schemes or artifices to defraud or to obtain money or property by means of false or fraudulent pretenses, representations, or promises, when for the purpose of executing the scheme, a person transmits, or causes to be transmitted, any writings, signs, signals, pictures, or sounds by means of wire communication in interstate commerce.

## Statutory Basis for Civil Forfeiture

10.     Title 18, United States Code, Section 981(a)(1)(C) authorizes civil forfeiture of the following:

> any property real or personal which constitutes or is derived from proceeds that are traceable to . . . any offense constituting "specified unlawful activity" (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such an offense.

11.     Title 18, United States Code, Sections 1956(c)(7) and 1961(1) define Wire Fraud, in violation of 18 U.S.C. § 1343, as a specified unlawful activity.

## Factual Basis

12.     The Defendants *in rem* were the proceeds of a knowing violation or violations of 18 U.S.C. § 1343 and are therefore subject to federal forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). Evidence supporting forfeiture includes, but is not limited to, the following:

a.  A Business Email Compromise (BEC) is a scheme in which fraudsters obtain access to an email account used by a business and, using that access, send email messages purporting to come from authorized persons within the business.

b.  This BEC scheme involved a law firm in the Eastern District of Michigan (Law Firm) that—along with a trust administration company (Trust Company)—were administering a compensation fund.

c.  The Law Firm had an IT security breach that occurred prior to the fraudulent requests for the disbursement of funds. As a result of this security breach, currently unidentified subject(s) were able to generate emails from the Law Firm email account that appeared to be legitimate.

d.  During this time, the Law Firm was unaware their IT system had been compromised or that emails went out that were not authorized.

e.  The unidentified subject(s) sent emails to the Trust Company using the Law Firm email account that appeared to be legitimate and which directed the Trust Company to wire funds from the compensation fund to three different bank accounts of other individuals.  Since the emails appeared to originate from the Law Firm (as a result of the security

4

breach), the Trust Company believed that the request to wire the funds as directed in the emails were legitimate and subsequently disbursed the funds.

f.  None of the individuals that received the fraudulent funds were entitled to receive them.

g.  On or about July 25, 2022, the Trust Company received instructions from the Law Firm they believed to be legitimate, and subsequently disbursed funds in wire transfers to three separate bank accounts owned by three separate individuals.

h.  Two individuals have been identified as the owners of the accounts that were the beneficiary of some of the stolen funds in the BEC.

i.  At this time, it is not believed that the owners of the receiving bank accounts actively participated in the fraudulent scheme. Currently, the investigation has not established any link between the owners of the three bank accounts that received the fraudulent funds.

j.  On August 1, 2022, the Trust Company utilized their bank account at Atlantic Union Bank ending in 4149 (Atlantic 4149) and wired $853,657.98 into a Bank of America account ending in 3508 (BOA 3508).

k. On August 9, 2022, the Trust Company also wired $498,450.00 from Atlantic 4149 into BOA 3508.

l. BOA 3508 is owned by an individual (Account Holder 1) who was apparently the victim of a "romance internet scam" and unwittingly used her accounts to receive fraudulent funds and then transfer them to other accounts, at the direction of another individual.

m. Once the funds were deposited into BOA 3508, Account Holder 1 made five separate transfers from BOA 3508 to another Bank of America account ending in 3093 (BOA 3093). Those transfers were as follows:

> August 1, 2022, $760,301.50 transferred to BOA 3093
> August 3, 2022, $90,000.00 transferred to BOA 3093
> August 10, 2022, $474,350.11 transferred to BOA 3093
> August 10, 2022, $5,000.00 transferred to BOA 3093
> August 10, 2022, $21,101.66 transferred to BOA 3093

n. As a result of these five transactions, Account Holder 1 transferred a total of $1,350,753.27 of the original $1,352,197.83 in funds that were deposited into her account by fraudulent means.

o. Bank records confirmed that Account Holder 1 later transferred the majority of the $1,350,753.27 from BOA 3093 into other cryptocurrency accounts, which were later transferred into additional

cryptocurrency accounts, none of which were under the control of Account Holder 1.

p. Bank records further reflect that when Bank of America became aware of the fraudulent funds, via communication with Trust Company representatives, they froze $5,000.00 of the fraudulent funds that were left in Account Holder 1's BOA 3093.

q. A further review of BOA 3093 shows that Account Holder 1 made four deposits using BOA wire transfers from BOA 3093 to a Gemini account ending in 2040 (Gemini 2040) totaling $1,334,156.87. The deposits are as follows:

> August 2, 2022, $712,501.43 transferred to Gemini 2040
> August 10, 2022, $471,511.91 transferred to Gemini 2040
> August 12, 2022, $23,206.77 transferred to Gemini 2040
> August 17, 2022, $126,401.88 transferred to Gemini 2040

r. Bank records show that the funds wired to Gemini 2040 were used to purchase Bitcoin.

s. Once the Bitcoins were purchased through the Gemini cryptocurrency platform, they were then sent to other cryptocurrency platforms that were not in the name of, or under the control of, Account Holder 1.

t. Based on the foregoing, the United States executed federal seizure warrants and seized $21.99 in US currency and 5.30109983 bitcoins from Gemini 2040, and the $5,000 frozen in BOA 3093.

u.  This *in rem* forfeiture complaint seeks forfeiture of the fraudulently

obtained funds traced to BOA 3093 and Gemini 2040.

## Claim for Relief

13.     Plaintiff re-alleges and incorporates by reference each and every

allegation contained in Paragraphs 1 through 12.

14.     The Defendants *in rem* are forfeitable to the United States of America

under 18 U.S.C. § 981(a)(1)(C) because they are proceeds traceable to a knowing

violation or violations of 18 U.S.C. § 1343.

## Conclusion and Relief

Plaintiff respectfully requests that this Court issue warrants for arrest of the

Defendants *in rem*; that due notice be given to all interested parties to appear and

show cause why forfeiture should not be decreed; that judgment be entered

declaring the Defendants *in rem* condemned and forfeited to the United States for

disposition according to law; and, that the United States be granted such further

relief as this Court may deem just and proper, together with costs and

disbursements of this action.

8

Respectfully submitted,

Dawn N. Ison
United States Attorney

S/K. Craig Welkener
K. Craig Welkener (DC 1033585)
Assistant U.S. Attorney
211 W. Fort Street, Ste. 2001
Detroit, Michigan 48226
(313) 226-0248
Kenton.Welkener@usdoj.gov

Dated: May 10, 2023

# **VERIFICATION**

I, Timitre Kyriakides, state that I am a Special Agent with the United States Secret Service. I have read the foregoing Complaint for Forfeiture and declare under penalty of perjury that the facts contained therein are true and correct based upon knowledge possessed by me and/or upon information received from other law enforcement agents.

_____

Timitre Kyriakides, USSS SA

Dated: _MAY 5TH_, 2023

10